# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Xavier Alfred Haywood,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Minnesota D.O.C.,<br><br>　　　　　Respondent. | Case No. 21-cv-2565 (KMM/DJF)<br><br><br>**REPORT AND RECOMMENDATION** |

　　　　This matter is before the Court on Petitioner Xavier Alfred's Petition for Writ of Habeas Corpus ("Petition") under 28 U.S.C. § 2254 (ECF No. 1). Mr. Haywood was convicted in Minnesota state court for aiding an offender after the fact for his role in a 2017 murder. *See State v. Haywood*, 2020 WL 4743525, at *1 (Minn. Ct. App. Aug. 17, 2020). Mr. Haywood was sentenced to 190 months in prison (ECF No. 9-3)[1] and at the time of his Petition was serving his sentence at the Minnesota Correctional Facility - Fairbault ("MCF-Fairbault") (ECF No. 1 at 1). Mr. Haywood argues his conviction and sentence should be overturned on grounds that: (1) he was denied his constitutional right to an impartial judge; (2) he was denied his right to a fair trial and due process when the presiding judge admitted alleged hearsay testimony and prohibited him from calling the declarant to the stand; (3) the presiding judge abused his sentencing discretion by setting his crime severity level at a 10 out of 10; and (4) he was denied effective assistance of counsel when the presiding judge denied his motion for a continuance three weeks before his trial began. For the reasons given below, the Court recommends dismissing Mr. Haywood's Petition.

---

[1] The Court refers to the document and page number as identified in CM/ECF; not the exhibit numbers as identified at ECF No. 9, Ex. 1.

1

I.   **Background**

   a.   **Factual Background**

Mr. Haywood's conviction arises from his alleged role in the murder of William Grahek at Mr. Grahek's residence during an attempted burglary and robbery on February 14, 2017. *See State v. Haywood*, 2020 WL 4743525, at *1 (Minn. Ct. App. Aug. 17, 2020). The State presented evidence at the trial demonstrating Mr. Haywood met Mr. Grahek about a month or two before the murder so Mr. Grahek could buy marijuana from Mr. Haywood and Mr. Haywood could buy ecstasy from Mr. Grahek. *Id.* Mr. Haywood met Mr. Grahek at his residence for the exchange. *Id.* During the meeting, Mr. Grahek took Mr. Haywood to his basement bedroom, where Mr. Grahek kept a safe containing money and drugs. *Id.*

Sometime later, Mr. Haywood informed Noah Baker of the safe Mr. Grahek kept in his house containing money and drugs. *Id.* Mr. Baker, along with Deandre Davenport and Noah King, decided to rob Mr. Grahek at his residence. *Id.* At around noon on February 14, 2017 there were several contacts between Mr. Davenport's cell phone and one of Mr. Haywood's cell phones. *Id.* At roughly 2:00 p.m., Mr. Davenport, Mr. Baker and Mr. King drove to Mr. Grahek's house. *Id.* The three men entered Mr. Grahek's house, where they ultimately encountered, shot and killed Mr. Grahek. *Id.*

Mr. Davenport and Mr. Haywood resumed contact beginning at 4:14 p.m. that same day, texting or calling each other about 20 times. *Id.* at *2. At trial, over Mr. Haywood's objection, Mr. Baker testified he had heard Mr. Davenport tell Mr. Haywood over the phone that they "did a robbery and it went bad." *Id.* In a recorded statement played for the jury, Mr. Baker told law enforcement Mr. Haywood advised him and Mr. Davenport to get a hotel room "[t]o get away." *Id.* Mr. Haywood's girlfriend booked Mr. Davenport a hotel room at the latter's request. *Id.* Mr.

Haywood and his girlfriend picked up Mr. Davenport and drove him to the hotel. *Id.* Mr. Haywood's girlfriend checked in upon arrival, gave the key to Mr. Davenport, and then left the hotel with Mr. Haywood. *Id.* Mr. Baker arrived at the hotel later. *Id.* Mr. Haywood's cellphone records showed that throughout that night he ran internet searches for breaking news in Duluth, Minnesota, the location of Mr. Grahek's residence. *Id.*

Mr. Haywood visited the hotel room occupied by Mr. Davenport and Mr. Baker the next day. *Id.* Mr. Haywood left the hotel with Mr. Baker and drove to Mr. Baker's house to pick up gasoline. *Id.* They then drove to a park where Mr. Baker, Mr. Davenport and Mr. King had previously left a garbage bag containing the clothes they wore during the shooting, picked up the bag, and drove to a different park where Mr. Baker burned the clothing in a wooded area. *Id.* Mr. Baker testified he borrowed one of Mr. Haywood's cell phones to use as a flashlight to find the wooded area. *Id.* During that time Mr. Haywood used one of his cell phones to text his other cell phone, "This is [Haywood] man[,]" "I'm turning the car around," and "Noah pic up the phone boi." *Id.* After dropping off Mr. Baker later that night, Mr. Haywood used one of his cell phones to search for "aiding an offender" and "Minnesota state statute of aid an offender." *Id.*

## b. Procedural Background

### i. Pretrial Motions

#### 1. Motion to Remove Judge Munger for Lack of Impartiality

Mr. King and Mr. Davenport had separate trials before Judge Mark A. Munger prior to Mr. Haywood's trial. Mr. King had a bench trial and Mr. Davenport had a jury trial. (*See* ECF No. 9-18 at 2.) Judge Munger made findings regarding Mr. Haywood's role in the offense in connection with both cases. In his Findings of Fact at Mr. King's trial, Judge Munger concluded the State had proved beyond a reasonable doubt that:

3

> 44. Further investigation by DPD indicated (through the surveillance videos of the Signature Inn and through cell phone records of Defendant Haywood) that Defendants Haywood and N. Baker left the Signature Inn just before 07:00pm on 02/15/17, returning just as Mr. Gunsallus was leaving for Austin. (See Exh. 85.) **Time spent by Defendants Haywood and N. Baker away from the motel coincided and collaborated [sic] DPD's hypothesis that Defendants were disposing of evidence by burning it during that timeframe**.

(*See id.*) (emphasis in the original.)

At Mr. Davenport's sentencing hearing, Judge Munger stated the following with respect to Mr. Haywood's involvement:

> To my way of thinking, this case involves the tragic interplay of six key events.
>
> ***
>
> The second event was, unfortunately, the introduction by Mr. Vange, who was a friend of William Grahek, to Mr. Xavier Haywood. Mr. Haywood's day in court is in the future. It's a different day in court because it's not looking exactly at participation in the murder, it's what took place after the fact, and we'll leave that for another day, but that event, the introduction, according to Mr. Vange and two trials where he testified very clearly that he was the one who had introduced Mr. Xavier Haywood to Mr. William Grahek, and, in fact, brought him into the basement, showed him where the drugs were, showed him where the safe was. They were able to see the money that was in the safe. That was the second event.
>
> ***
>
> The third event was Mr. Haywood providing that information of what he learned in the basement of Mr. Grahek's residence to Mr. Davenport. There's absolutely no doubt in my mind in listening to the testimony in two trials now that the only connection between those three individuals, and there were three, Mr. Davenport was one of the three, I am utterly convinced of that, and so, I was, with respect to my court trial with Mr. King and a jury trial in Brainerd, came to the same conclusion. The only connection between Mr. Grahek and those three was Xavier Haywood.

(*Id.* at 2–3; ECF No. 9-19 at 2–4.)

Judge Munger also presided over Mr. Haywood's jury trial. On March 10, 2019, Mr. Haywood moved to remove Judge Munger on impartiality grounds in light of the statements Judge Munger made in the King and Davenport cases. (ECF No. 9-18.) Chief Judge Sally L. Tarnowski

4

of the Sixth Judicial Circuit denied the motion, concluding Judge Munger's prior conduct, statements and decision to continue presiding over Mr. Haywood's case were consistent with the Minnesota Code of Judicial Conduct. (ECF No. 9-19 at 4–7.)

### 2. Motion for Continuance

Mr. Haywood initially retained private counsel in his defense (ECF No. 9-21 at 2–3), but his attorney missed several pretrial hearings and the State ultimately suspended the attorney's license for 120 days for reasons unrelated to Mr. Haywood's case. (*Id.*)  As a result of the suspension, Mr. Haywood was left without representation at a September 17, 2018 hearing before Judge Munger. (*Id.* at 2.)  At the hearing, Judge Munger explained on the record that Mr. Haywood either should talk to the private attorney his former counsel had referred or apply to be represented by a public defender. (*Id.* at 3.)  Taking into consideration Mr. Haywood's need to retain new counsel, and the fact that Mr. Haywood's case had been pending for over a year-and-a-half at that point in time, Judge Munger set a March 18, 2019 pretrial motions hearing date and a March 19, 2019 trial date. (*Id.* at 3, 5.)

Mr. Haywood retained new counsel roughly three months later, in early January 2019.  His new attorney filed a letter with the Court at the end of February seeking to continue the trial date due to the voluminous information he needed to review to prepare for the trial.  *See Haywood*, 2020 WL 4743525, at *10; (ECF No. 9-23).  Because Mr. Haywood had failed to retain substitute counsel for over three months after to the September 18 hearing, and the case had been pending for approximately two years, Judge Munger denied the motion for continuance. (ECF No. 9-24.)

### ii. Trial and Sentencing

During Mr. Haywood's trial, the State sought to admit testimony from Noah Baker over Mr. Haywood's attorney's hearsay objections regarding certain statements Mr. Davenport

allegedly had made. (*Id.* at 133–45.) Judge Munger excluded testimony from Mr. Baker regarding information Mr. Haywood allegedly provided to Mr. Davenport concerning the layout of the Grahek home, the location of the safe, the drugs and money in the safe, and concerns that Mr. Grahek may have had a dog. (*Id*. at 135, 143.) But Judge Munger admitted Mr. Baker's testimony regarding a phone call Mr. Baker overheard between Mr. Davenport and Mr. Haywood, during which Mr. Davenport told Mr. Haywood that they "***did a robbery and it went bad***." *Haywood*, 2020 WL 4743525, at *6 (emphasis added). Judge Munger admitted the statement as a statement against Mr. Davenport's interests under Rule 804(b)(3) of the Minnesota Rules of Evidence.

In admitting the statement at issue, Judge Munger first found Mr. Davenport was an unavailable witness. (ECF No. 9-14 at 139–45.) As Judge Munger explained, though Mr. Davenport was included in Mr. Haywood's witness list and could be made available to testify, Mr. Davenport had a pending direct appeal and request for post-conviction relief, which meant that—if called to testify—he would almost certainly assert his Fifth Amendment right against self-incrimination. (*Id.*) Judge Munger further determined that the statement was against Mr. Davenport's interest (*id.* at 140) and found—over Mr. Haywood's objection—that there were sufficient corroborating circumstances indicating the statement was trustworthy (*id.* at 142-144). Judge Munger specifically found that, although Mr. Baker had testified inconsistently as to other facts in the case, he had never wavered on the particular statement at issue. (*Id*. at 144.)

After the State rested its case in chief, Judge Munger asked whether he would like to call Mr. Davenport to the stand. Mr. Haywood ultimately declined. (ECF No. 9-15 at 220; *see also* ECF No. 9-20, ordering Mr. Davenport's transport to the trial.) After both sides rested, the jury found Mr. Haywood guilty of Aiding an Offender—Accomplice After the Fact, Obstruction, in violation of Minn. Stat. § 609.459, subd. 3. (ECF No. 9-2.)

6

At sentencing, because Minn. Stat. § 609.459, subd. 3 is an 'unranked offense', Judge Munger was tasked with determining the severity-level of Mr. Haywood's criminal conduct to determine his presumptive sentence. *See* Minn. Sent. Guidelines 5.A (2016). Judge Munger ranked Mr. Haywood's conduct at a severity-level of 10, the most severe level, because Mr. Haywood: (1) helped conceal evidence related to a first-degree murder; (2) clearly was aware of what happened at Mr. Grahek's residence; and (3) was the "mastermind" of the circumstances surrounding the murder of Mr. Grahek. Judge Munger ultimately sentenced Mr. Haywood to 190 months of incarceration. *See Haywood*, 2020 WL 4743525, at *7–*8.

### iii. Appeals

Mr. Haywood's appellate counsel raised three issues on appeal: (1) that Mr. Haywood was entitled to a new trial because the chief judge applied the wrong standard in determining whether to disqualify Judge Munger, violating Mr. Haywood's constitutional right to an impartial judge; (2) that the district court abused its discretion and prejudiced Mr. Haywood's right to a fair trial and due process by holding Mr. Baker's statement was admissible as a statement against interests when Mr. Davenport, the declarant, was available to testify; and (3) that the district court abused its discretion at sentencing by ranking Mr. Haywood's conduct at a severity-level of 10, because doing so was inconsistent with the levels set for similarly-situated persons, and because the court relied on allegedly unsupported factual findings. (*See* ECF No. 9-4 at 2–3.) Mr. Haywood himself raised two additional issues in a supplemental pro se filing: (1) that the district court's decision to deny his motion for continuance denied him the right to a fair trial and effective assistance of counsel; and (2) that the evidence presented at trial was not sufficient to support a conviction. (ECF No. 9-5.)

The Minnesota Court of Appeals denied each of the arguments Mr. Haywood and his counsel propounded. *State v. Haywood*, 2020 WL 4743525 (Minn. Ct. App. Aug. 17, 2020). In addressing Mr. Haywood's challenge to the denial of his motion for disqualification of Judge Munger, the court held that the chief judge applied the correct legal standard under Minnesota state law. The court reasoned that the jury, rather than Judge Munger, was the ultimate factfinder in Mr. Haywood's case, and that any question of Judge Munger's impartiality under that state law standard was belied by the fact the record reflected no behavior by Judge Munger demonstrating bias. *Id.* at *3–*5.

In addressing the admissibility of Mr. Baker's testimony about Mr. Davenport's statement that they "did a robbery and it went bad," the court affirmed the district court's decision, but on an alternative ground—that the statement was not hearsay because it was not offered for the truth of the matter asserted. *Id.* at *6–*7. The court reasoned that the State offered the testimony to establish Mr. Haywood's knowledge or belief that Mr. Davenport, Mr. Baker and Mr. King committed a crime, and not that the crime had occurred. *Id.*

Next, the court found the district court's decision to rank Mr. Haywood's offense severity level at a level 10 was supported by a sufficient statement of reasons, the record, and applicable case law. The court thus concluded that the district court did not abuse its discretion under state law in sentencing Mr. Haywood at that level. *Id.* at *7–*9.

The court further determined that the district court did not abuse its discretion in denying Mr. Haywood's motion for continuance, because Mr. Haywood's counsel's difficulties in preparing for trial were largely attributable to Mr. Haywood's delay in retaining new counsel. *Id.* at *10 & n.5. The court also reasoned that Mr. Haywood's argument focused on issues related to

trial strategy, which appellate courts "generally will not review" on a claim for ineffective assistance of counsel. *Id.* at *10 n.5 (citation and quotation omitted).

Mr. Haywood petitioned the Minnesota Supreme Court for further review on three grounds: (1) whether the Court of Appeals erred in affirming the denial of the motion to disqualify Judge Munger; (2) whether the district court erred in admitting Mr. Baker's testimony about Mr. Davenport's statement; and (3) whether the district court abused its discretion in setting the offense severity level at 10. (*See* ECF No. 9, Ex. 9 at 2–5.) The Minnesota Supreme Court denied the petition on November 17, 2020. *See Haywood*, 2020 WL 4743525, at *1.

## II.  Standard of Review

The standard established by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") for a successful habeas petition under section 2254 is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (citations omitted). Under section 2254(d), "a federal court may grant habeas relief only when a state court's decision on the merits was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by' decisions from [the Supreme] Court, or was 'based on an unreasonable determination of the facts.'" *Id.* (quoting 28 U.S.C. § 2254(d)). Clearly established federal law "includes only the holdings, as opposed to the dicta, of [the Supreme Court's] decisions." *Id.* (citation and quotation omitted). "Where Supreme Court decisions 'provide no categorical answer' to the issue at hand and do not 'squarely address[] the issue' presented, federal law is not clearly established for purposes of a § 2254 petition." *Young v. Symmes*, 06-cv-4246-JRT-JJG, 2008 WL 4748569, at *2 (D. Minn. Oct. 28, 2008) (quoting *Wright v. Van Patten*, 552 U.S. 120, 125–26 (2008)) (bracket in *Young*). To unreasonably apply clearly established federal law, a state court must engage in an "objectively unreasonable" application of the law. *Woods*, 572 U.S. at 316. In other words,

misapplication of the law is not enough to meet this burdensome threshold—"even clear error will not suffice." *Id.* (citation and quotation omitted). Instead, a petitioner must "show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* (citation and quotation omitted).

### III.   Analysis

#### a.  Mr. Haywood's Claims

##### i.  Judicial Impartiality

Mr. Haywood alleges his constitutional right to an impartial judge was infringed because the chief judge, in reviewing his motion to remove Judge Munger from his trial, misstated the applicable legal standard (ECF No. 1 at 5). The State responds that Mr. Haywood fails to state a cognizable claim under section 2254 because the underlying basis for Mr. Haywood's argument is that the chief judge misapplied state law, which is not cognizable under section 2254 (ECF No. 10 at 14–15).

Federal courts "lack the authority to review the Minnesota state courts' interpretation and application of state law, for 'federal habeas corpus relief does not lie for errors of state law ... [and] it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.'" *Evenstad v. Carlson*, 470 F.3d 777, 782 (8th Cir. 2006) (quoting *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991)). Mr. Haywood's claim is predicated at least in part on the chief judge's alleged misapplication of the Minnesota state law standard for judicial disqualification, a decision affirmed by the Minnesota Court of Appeals on state law grounds. *See Haywood*, 2020 WL 4743525, at *4 ("Thus, Haywood failed to establish that the Code of Judicial Conduct required the district court judge to recuse himself.") To the extent Mr. Haywood bases

10

his judicial impartiality claim on an alleged violation of this standard, he cannot petition this Court for relief and that aspect of his claim fails.

But Mr. Haywood's challenge to the trial judge's impartiality also may be construed to raise a claim that he was denied due process under the U.S. Constitution. The floor established by the Due Process Clause entitles a defendant to a "fair trial in a fair tribunal before a judge with no actual bias against the defendant or interest in the outcome of his particular case." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997) (cleaned up) (citation and quotation omitted). A judge who, in a separate trial, makes factual observations relevant to the future trial of a related party, need not be disqualified from presiding over that separate party's jury trial due to the prior factual observations alone. *See United States v. Thirion*, 813 F.2d 146, 154–55 (8th Cir. 1987) (affirming district judge's decision not to recuse himself under 28 U.S.C. §§ 144 and 455 on that basis, because requiring recusal would mean that "no judge could preside at a second trial upon remand from an appellate court.").[2] Instead, there must be clear and tangible evidence of personal bias or an interest in the outcome of the case. *See, e.g.*, *In re Murchison*, 349 U.S. 133 (1955) (holding that a judge who acts as a one-man grand jury out of which contempt charges arise cannot then preside over the contempt trial).

At most, Mr. Haywood can argue Judge Munger prejudged him when Judge Munger reached factual conclusions about Mr. Haywood's involvement in the murder of Mr. Grahek at his codefendant's bench trial. But this fact alone would not require recusal under the Due Process Clause, as Judge Munger was not the factfinder in Mr. Haywood's jury trial and had no alleged personal bias or interest in the outcome of the case. *See Thirion*, 813 F.2d at 154–55. As Mr.

---

[2] 28 U.S.C. §§ 144 and 455 establish the statutory standard governing disqualification of a judge in federal court.

Haywood does not raise any additional bases to question Judge Munger's impartiality, this claim should be dismissed.

### ii. Mr. Baker's Testimony

Mr. Haywood argues the district court denied his right to a fair trial, by prohibiting him from calling Mr. Davenport as a witness while allowing Mr. Baker to testify about the statement he overheard Mr. Davenport make to Mr. Haywood (ECF No. 1 at 7). The State disputes Mr. Haywood's recitation of the facts, stating that the court ordered Mr. Davenport's transport to the trial to testify and specifically asked whether Mr. Haywood wanted to call Mr. Davenport as a witness. (ECF No. 10 at 16-17). With respect to the admission of Mr. Baker's testimony, the State argues the statement was not hearsay and that Mr. Haywood has not challenged its admission under clearly established federal law. (*Id.* at 16–17.)

The record supports the State's characterization of the facts. Judge Munger signed an order on March 14, 2019, requiring Respondent to release Mr. Davenport for transportation to Duluth to testify at Mr. Haywood's trial. (ECF 9-20.) And During Mr. Haywood's trial the court asked whether Mr. Haywood intended to call Mr. Davenport as a witness, but his counsel declined (ECF No. 9-15 at 220). While it is entirely possible—if not probable—that Mr. Davenport would have asserted his Fifth Amendment right not to testify if Mr. Haywood had called him, Mr. Haywood's claim that the court prohibited him from calling Mr. Davenport lacks any basis in fact.

Mr. Haywood also claims the district court violated his right to due process and a fair trial by admitting Mr. Baker's testimony about the statement at issue, which he challenges as hearsay (ECF No. 1 at 7). "[B]ecause the admission or exclusion of evidence is primarily a question of state law, an evidentiary determination rarely gives rise to a federal question reviewable in a habeas petition." *Taylor v. Steele*, 372 F. Supp. 3d 800, 828 (E.D. Mo. 2019) (citing *Scott v. Jones*, 915

F.2d 1188, 1190–91 (8th Cir. 1990)).  "Federal Courts 'may not review evidentiary questions unless they implicate federal constitutional rights.'"[3] *Id.* (quoting *Evans v. Luebbers*, 371 F.3d 438, 443 (8th Cir. 2004)).  To "reverse a state court evidentiary ruling[,]" the petitioner must show "that the alleged improprieties were 'so egregious that they fatally infected the proceedings and rendered his entire trial fundamentally unfair.'" *Anderson v. Goeke*, 44 F.3d 675, 679 (8th Cir. 1995) (quoting *Hamilton v. Nix.* 809 F.3d 463, 470 (8th Cir. 1987)).  "To carry that burden, the petitioner must show that … absent the alleged impropriety[,] the verdict probably would have been different[.]" *Id.* (citations omitted).

    The Court is persuaded that the Minnesota appellate court's analysis of the evidentiary ruling was correct.  Moreover, Mr. Haywood has not shown why or how the admissibility of Mr. Baker's testimony was dispositive as to the outcome of his trial.  Upon review of the record, the Court cannot say that Mr. Baker's testimony about Mr. Davenport's statement, when viewed in the context of the entire trial, deprived Mr. Haywood of a fair trial.  Mr. Haywood declined the opportunity to call Mr. Davenport as a witness, and Mr. Davenport's statement was one of many pieces of circumstantial evidence that the jury could have relied upon in finding Mr. Haywood guilty.  This claim should be dismissed.

---

[3] Mr. Haywood does not challenge the admissibility of testimony regarding Mr. Davenport's statement under any well-established line of federal cases.  For example, *Bruton v. United States*, 391 U.S. 123 (1968), does not apply when, as in this case, the defendant and the declarant are tried separately, *see United States v. Johnson*, 378 F. Supp. 2d 1051, 1063 (N.D. Iowa 2005), and the right to confrontation recognized in *Crawford v. Washington*, 541 U.S. 36 (2004), does not apply when the statement at issue is nontestimonial, as Mr. Davenport's statement was here.  *See, e.g.*, *United States v. Johnson*, 495 F.3d 951, 975-79 (8th Cir. 2007) (holding that remarks about murders made by one inmate to another "fall safely outside the scope of testimonial evidence").

### iii. Sentencing Severity

Mr. Haywood alleges the trial court abused its discretion at sentencing by setting the severity level of his offense at a 10—the highest level possible (ECF No. 1 at 8). He asserts, without offering examples or other support, that offenses "worse" than his own have been ranked lower. (*Id.*) But application of the Minnesota Sentencing Guidelines is a quintessential state court function. As noted above, this Court lacks authority on habeas review to second-guess Minnesota state court interpretations of Minnesota law. *Evenstad*, 470 F.3d at 782 (quoting *Estelle*, 502 U.S. at 67–68). Because Mr. Haywood does not argue the severity ranking of his offense at sentencing violated a clearly established federal law, he fails to state a cognizable claim for relief under section 2254. This claim should be dismissed.

### iv. Ineffective Assistance of Counsel

The premise of Mr. Haywood's ineffective assistance claim is not entirely clear, but he contests the denial of his motion to continue the trial date after his attorney was suspended and substitute counsel appeared. Mr. Haywood appears to contend that without more time to prepare, his new counsel's performance was so ineffective as to violate his Sixth Amendment right to counsel (ECF No. 1 at 10).

Though Mr. Haywood raised this argument on appeal to the Minnesota Court of Appeals, he did not raise it in his Petition for Review to the Minnesota Supreme Court. (*See* ECF No. 9-9.) "Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). Prior to seeking federal habeas relief, "a prisoner must fairly present <u>all</u> of his federal law claims to the <u>highest available state court</u> before seeking habeas corpus relief in federal court." *Walker v. Bosch*, 22-cv-1595-WMW-LIB-, 2022 WL 18401941, at *8 (D. Minn. Oct. 26, 2022) (underline in original), *report*

*and recommendation adopted*, 2023 WL 359601 (D. Minn. Jan. 23, 2023) (citing *O'Sullivan*, 526 U.S. at 845); *Favors v. Jesson*, 13-cv-108-JRT-LIB, 2013 WL 4052668, at *2 (D. Minn. Aug. 9, 2013) ("To satisfy the exhaustion requirement, the petitioner 'must fairly present his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim.'") (quoting *Baldwin v. Reese*, 541 U.S. 27, 29 (2004)).  This claim is therefore barred on the ground that Mr. Haywood failed to exhaust it.

This claim also fails on the merits.  *Strickland v. Washington* requires a defendant alleging ineffective assistance of counsel under the Sixth Amendment to show both that counsel's performance was deficient and that the alleged deficiency prejudiced the defendant. 466 U.S. 668, 687 (1984).  The proper question when a habeas petitioner raises an ineffective assistance of counsel claim under section 2254 is whether the decision of the highest state court applying *Strickland* was contrary to, or an unreasonable application of, clearly established federal law. *Williams v. Roper*, 695 F.3d 825, 831 (8th Cir. 2012).

The Minnesota Court of Appeals determined that Mr. Haywood was largely challenging the denial of his motion for continuance and not the efficacy of his trial counsel. *Haywood*, 2020 WL 4743525, at *10 & n.5.  But to the extent Mr. Haywood challenged his attorney's performance, his arguments focused on issues related to trial strategy. *Id.* at 10 n.5.  Though an extremely unreasonable strategic decision may violate the Sixth Amendment, courts "generally entrust … matters of trial strategy[] to the professional discretion of counsel." *United States v. Villalpando*, 259 F.3d 934, 939 (8th Cir. 2001) (citations omitted).  Since Mr. Haywood has not shown or even argued specifically why or how his trial counsel's strategy was so unreasonable as to violate his Sixth Amendment rights, this claim should be dismissed.

### b. Certificate of Appealability

A section 2254 petitioner cannot appeal an adverse ruling unless the reviewing court grants a Certificate of Appealability ("COA"). 28 U.S.C. § 2253(c)(1). A court may issue a COA only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To obtain a COA the petitioner must show that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The Court concludes that, in this case, the non-viability of Mr. Haywood's claims is not debatable by reasonable jurists. For this reason, the Court recommends no COA be issued in this matter. *See, e.g.*, *Lang v. Dep't of Corr.*, 15-cv-1508-DWF-BRT, 2015 WL 10007626, at *7 (D. Minn. Nov. 13, 2015) (so recommending), *report and recommendation adopted*, 15-cv-1508, 2016 WL 471333 (D. Minn. Feb. 5, 2016).

## RECOMMENDATION

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1. Petitioner Xavier Alfred Haywood's s Petition for a Writ of Habeas Corpus (ECF No. [1]) be **DISMISSED WITH PREJUDICE**; and

2. No Certificate of Appealability be granted in this matter.

Dated: May 1, 2023           *s/ Dulce J. Foster*
                             Dulce J. Foster
                             United States Magistrate Judge

**NOTICE**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).